In re Mary BOST, Debtor.

In re Lisa Ellis, Debtor.

In re Danielle Freeman, Debtor.

In re Lindsey Hanbrick, Debtor.

In re Kristen Hardcastle, Debtor.

In re Karry Dean Kelley and Deanna Carol Kelley, Debtors.

In re Myreon Slater, Debtor.

In re Janice Tittle, Debtor.

Nos. 4:05–BK–28537 E, 4:05–BK–28569 E, 4:05–BK–28274 E, 4:05–BK–28500 E, 4:05–BK–28229 E, 4:05–BK–28435 E, 4:05–BK–28451 E, 4:05–BK–18863 E.

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

April 26, 2006.

Norman David Angeleri, Conway, AR, for Debtors.

### MEMORANDUM OPINION AND ORDER IMPOSING SANCTIONS ON DEBTORS' COUNSEL

AUDREY R. EVANS, Bankruptcy Judge.

Now before the Court is the Court's *Order to Show Cause Why Debtors' Counsel Should Not Be Sanctioned* (the "**Order to Show Cause**") which came on for hearing on February 7, 2006 (the "**Show Cause Hearing**"). This Order was sent to all Debtors whose case was the subject of the Order. Debtors were invited, but not required to attend. Appearing at the hearing were Mr. Norman Angeleri on his own behalf; Mr. Jim Hollis on behalf of the United States Trustee (the "**Trustee**"); Ms. Janice Tittle, debtor; Ms. Danielle Freeman, debtor; and Mr. Myreon Slater, debtor. At the Show Cause Hearing, Mr. Angeleri was required to show cause why he should not be sanctioned under Federal Rule of Bankruptcy Procedure 9011, the Court's inherit power to sanction,[1] and/or

---

1. *See In re Brown*, 152 B.R. 563, 567 (Bankr. E.D.Ark.1993) (*citing Harlan v. Lewis*, 982 F.2d 1255 (8th Cir.1993) and *Citizens Bank &*

the Court's powers to prevent bankruptcy abuses under 11 U.S.C. § 105(a) for his repeated practice of filing incomplete bankruptcy petitions and pleadings in this Court. The Order to Show Cause included the following chart illustrating a sampling of the errors and omissions Mr. Angeleri had made, which had been brought to the Court's attention at that time. The Court notes that many other cases which were filed by Mr. Angeleri have since been brought to the Court's attention, but at the time the Order to Show Cause was entered, these were the cases with the most glaring deficiencies.

| Case Name | Number | Date Filed | Deficiency | Resolution |
|---|---|---|---|---|
| Bost, Mary | 05–bk–28537 | 10/16/05 | Schedules were for different debtors. | Case Dismissed 01/05/06 following attorney's failure to show cause in accordance with 12/14/05 Order to Show Cause. Schedules corrected and Motion to Reinstate filed and noticed out on 1/16/06. |
| Ellis, Lisa & Christopher | 05–bk–28569 | 10/16/05 | Petition not signed by attorney or debtors, and filed for spouse without authority. | Signatures received 12/13/05, almost two months after petition filed. Non-filing spouse subsequently dismissed. |
| Freeman, Danielle | 05–bk–28274 | 10/16/05 | Notice & Opportunity to Object to a Motion to Reinstate not signed by attorney. | Case dismissed 10/27/05. Signed Notice & Opportunity to Object submitted; case reinstated on 12/19/05. |
| Hanbrick, Lindsey | 05–bk–28500 | 10/16/05 | Failure to upload creditors into system. | Case dismissed 11/14/05. Creditors added, and signed Notice & Opportunity to Object submitted. Order reinstating case entered 1/12/06. |
| Hardcastle, Kristen | 05–bk–28229 | 10/19/05 | Notice & Opportunity to Object to a Motion to Reinstate not signed by attorney. | Case dismissed 10/26/05. Signed Notice & Opportunity to Object to a Motion to Reinstate submitted; attorney ordered to submit proposed order reinstating case on 12/21/05. Order reinstating case entered 1/12/06. |

*Trust Co. v. Case (In re Case),* 937 F.2d 1014, 1023 (5th Cir.1991)).

| | | | | |
|---|---|---|---|---|
| Kelley, Karry and Deanna | 05–bk–28435 | 10/16/05 | Schedules and statements were not signed by the Debtors or Debtors' counsel. | Order to Show Cause why case should not be dismissed for failure to cure deficiencies issued on 01/09/06. |
| Slater, Myreon | 05–bk–28451 | 10/16/05 | Notice & Opportunity to Object to a Motion to Reinstate not signed by attorney and providing incorrect response time. | Case Dismissed 10/28/05. Order to Show Cause why Motion to Reinstate should not be denied for failure to prosecute issued on 12/19/05, giving Debtor's counsel 10 days in which to show cause. No response was timely filed. |
| Tittle, Janice | 05–bk–18863 | 07/11/05 | Notice & Opportunity to Object to a Motion to Reinstate not signed by attorney and providing incorrect response time | Case Dismissed 10/26/05. Order to Show Cause why Motion to Reinstate should not be denied for failure to prosecute issued on 12/21/05. Signed Notice & Opportunity to Object with appropriate response time filed on 12/28/05. |

Following testimony of Mr. Angeleri, Ms. Tittle, Ms. Freeman, and Mr. Slater, and the argument presented by Mr. Hollis, the Court ruled that Mr. Angeleri would be ordered to disgorge all fees paid him by the debtors in the cases which were the subject of the Court's Order to Show Cause, and further stated that a transcript of the hearing would be ordered and turned over to the Arkansas Supreme Court's Committee on Professional Conduct in accordance with Local Rule 2090–2 of the United States Bankruptcy Court for the Eastern and Western Districts of Arkansas. The Court took under advisement whether or not to issue further sanctions against Mr. Angeleri. This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. § 1334(b).

## INTRODUCTION

There are three distinct sections in this Opinion. First, the Opinion sets forth a summary of the testimony and statements made at the Show Cause Hearing. Next, the Opinion provides a detailed narrative of each case (pp. 14 to 42). The detailed narrative is taken from the docket of each case, and when combined with the statements and testimony given at the Show Cause Hearing, provides all the facts taken into consideration by the Court. The case narratives are presented without analysis. It is not until the third section titled "Sanctions" that the Court provides analysis of the very technical and complex facts which are the basis for the sanctions imposed against Mr. Angeleri.

## THE SHOW CAUSE HEARING— SUMMARY OF TESTIMONY

At the Show Cause Hearing, the Court read its Order to Show Cause into the record, and invited Mr. Angeleri and Mr. Hollis to respond. Following their responses, the debtors who attended were invited to make statements. The Court swore in Mr. Angeleri and each debtor. A summary of their testimony and Mr. Hollis' statement on behalf of the United States Trustee follows.

### Norm Angeleri's Testimony

Mr. Angeleri explained that he passed the bar three years ago, but only started practicing law this past summer, and he has never practiced with another attorney. He said that he did not expect the large response of bankruptcy clients before the bankruptcy laws changed on October 17, 2005 (the effective date for most provisions enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")). Mr. Angeleri had advertised on a billboard and received a "massive response" from that. Mr. Angeleri stated that being new and hungry for business, he thought he could handle it. He said he had relatively few problems the first five or six weeks before the filing rush which occurred two or so weeks before the new law came into effect. Mr. Angeleri hired a staff person who had four years experience with an attorney in Conway. According to Mr. Angeleri, this person had experience filing one or two cases a week, and due to the large number of cases he was filing, mistakes ensued. He said he believes he filed approximately 107 bankruptcy petitions the last weekend and a total of 150 bankruptcy petitions the last two weeks before October 17, 2005. Mr. Angeleri explained that many of the last minute petitions were skeleton petitions,[2] without the schedules, and that was the reason a lot of his problems occurred. Mr. Angeleri later fired his staff, and it was some time before he could find new employees, and by that time, he was too concerned to let anyone else fix the problems so he attempted to fix them himself. He stated that he was overwhelmed and found himself sleeping in his office and working 16–20 hours a day. Mr. Angeleri stated:

> [I]t's an aberration I don't think we'll ever see this many filings again, and I will never see that kind of sheer number of clients ever coming through my door again. And if I had to go back and do it all over again, I would not have taken nearly as many clients..... I was, you know, young, brash attorney thinking that I could, you know, do it. That was my mistake.

Transcript, p. 13. Mr. Angeleri also said he believed he was suffering from sleep deprivation, and he did not take a day off for three or four months and ended up working during Christmas vacation while visiting his mother in Seattle, Washington. He also had some sort of respiratory illness but did not go to the doctor because he had no health insurance. Mr. Angeleri said, "[I]f I could go back, I would gain more experience first and take a dramatically less caseload. And I've developed a better system now that's in place, and I wish that I would have had that system in

---

**2.** A "skeleton" petition consists of a signed petition and a list of creditors, which is usually referred to as the "creditor matrix." A skeleton petition typically does not include any schedules or a statement of financial affairs. Pursuant to 11 U.S.C. § 521, a debtor is required to file a list of creditors, schedules of assets and liabilities, and a statement of financial affairs. Federal Rule of Bankruptcy Procedure 1007(c) provides that such information must be filed with the bankruptcy petition or within 15 days thereafter, unless an extension is granted on motion for cause shown.

place before—before the new law took effect." Transcript, p. 14.

Mr. Angeleri explained that some of the systems he now has in place to avoid filing problems include a moratorium to file no bankruptcy until he has all the required information saved on his software and can double check it. He has also ordered new software—his old software from Westlaw had a problem with electronic signatures. Mr. Angeleri also said he has developed better information sheets that require "every little detail that I can possibly get from the debtors," which his prior information sheet was lacking. Transcript, p. 15. He has severely limited the number of intakes that he has to about one or two a week until he gets his problems sorted out, and he intends to seek medical treatment for his sleep deprivation.

### Jim Hollis's Statement on behalf of the United States Trustee

Mr. Hollis stated that Mr. Angeleri had frequent problems with his cases *even before* the influx of cases filed prior to the effective date of the new bankruptcy law. Mr. Hollis said that people in the U.S. Trustee's office, including himself, had worked with Mr. Angeleri to straighten out his problems, but that Mr. Angeleri continued to make filing errors despite the personal assistance given to him. Mr. Hollis also stated,

> We don't believe he's been any busier than any other attorneys in this city and the state. Other attorneys have far more cases, and they don't have the same problems that he's had. and I don't think it's just that they have better staff, I think the problem is inherent with Mr. Angeleri.

Transcript, p. 17.

As an example of some of the problems that the U.S. Trustee's office had tried to help Mr. Angeleri with, Mr. Hollis explained that a lot of Mr. Angeleri's cases had been dismissed because Mr. Angeleri failed to upload his clients' lists of creditors, commonly referred to as the "creditor matrix." Mr. Hollis explained that the matrix is very important because without one, the notice of the first meeting of creditors cannot be sent out, and that notice contains very important deadlines, such as the deadline for filing an objection to discharge or a complaint seeking to except a debt from discharge.[3] Mr. Hollis said that he understood the problem to be that Mr. Angeleri was not hitting a certain download button that would "upload" the creditor matrix onto the Court's electronic filing system. Mr. Hollis said that U.S. Trustee staff would explain this to Mr. Angeleri, but that Mr. Angeleri continued to make the same mistake.

Mr. Hollis stated that most bankruptcy attorneys he knew would be mortified if they had the same types of problems Mr. Angeleri had, and would correct those problems before filing any new cases. Mr. Hollis stated that he believed that if Mr. Angeleri had tried to correct the problems he had, he would not be before the Court on an Order to Show Cause. Specifically regarding Mr. Slater's case, Mr. Hollis

---

**3.** Section 341(a) of the Bankruptcy Code requires the United States Trustee to convene a meeting of creditors within a reasonable time after a bankruptcy petition is filed. Section 343 requires the debtor to appear at such a meeting and submit to examination under oath. Notice of the § 341(a) meeting is required pursuant to Fed. R. Bankr.P. 2002(a)(1). Official Form 9A (Chapter 7 Individual or Joint Debtor No Asset Case), which includes such notice, also provides the deadline for objecting to a debtor's discharge under 11 U.S.C. § 727 (provided by Fed. R. Bankr.P. 4004(a)) and the deadline for filing a complaint seeking a determination of dischargeability of certain debts (provided by Fed. R. Bankr.P. 4007(c)).

said that Mr. Slater's case was particularly illustrative of the egregious nature of Mr. Angeleri's actions—specifically referencing a number of deficiencies which are outlined in more detail in the case summary of Mr. Slater's case, later in this Order.

### Danielle Freeman, Debtor/Client of Mr. Angeleri

Debtor Danielle Freeman testified that she was very pleased with Mr. Angeleri when she first met with him because he agreed to represent her on such short notice, and because he made special arrangements to meet with her and work around her work schedule. She became puzzled, however, when she was unable to reach him over the next two weeks while trying to make the rest of her payment to him. She felt that something must be wrong if he would not answer the phone to collect the rest of his money. Ms. Freeman said she continued to call and leave messages for Mr. Angeleri, but he did not return her phone calls. She said,

> I was kind of like shook up because, like I said, I didn't know if this was going to make me be in effect, you know, have me in effect with the new law. And that was my intentions of trying to get it filed so I wouldn't fall under the new laws and rules.

Transcript, p. 21. Ms. Freeman said that she also left personal messages on Mr. Angeleri's cell phone, which was a Seattle number—a long distance phone call—which he did not return. She filed in October but did not hear anything until she got the Court's Order to Show Cause in late January 2006. Ms. Freeman explained that she incurred no specific problems as a result of the delay in her case,

except that she had to delay a trip she had planned because her meeting of creditors was now scheduled for February 23, 2006.

The Court asked Ms. Freeman if she was aware that her case had been dismissed. Ms. Freeman testified that she was not aware that her case had been dismissed; she did not learn this until she received the Court's Order to Show Cause—it was the first thing she received since she filed for bankruptcy in October.[4] She then received the notice regarding her first meeting of creditors two days later. Ms. Freeman testified that she met with Mr. Angeleri personally before filing, but had not seen him since, nor had she received any correspondence from his office.

The Court asked Ms. Freeman why she chose Mr. Angeleri as her attorney, and she explained that she had seen Mr. Angeleri's billboard on Crystal Hill Road and that she had also seen Mr. Angeleri's advertisement in the Arkansas Democrat–Gazette, and his fees were much lower than other attorneys. She also said that she called other attorneys, and they were all booked.

### Janice Tittle, Debtor/Client of Mr. Angeleri

Debtor Janice Tittle explained that she had been dealing with Mr. Angeleri since July 11, 2005. She stated that it was hard for her to decide to file bankruptcy in the first place, and that it was very embarrassing to her that her case had continued as long as it did. Ms. Tittle received a notice that her case had been dismissed, and she called Mr. Angeleri regarding the dismissal and he said it would be taken care of and not to worry about it. She believes this happened two or three times, and as

---

4. Ms. Freeman's case docket indicates that many orders, memorandums, notices and other documents were mailed to her at the address listed on her petition, including the order dismissing her case; however, only one item was returned to the Court as undeliverable. The Court has no information as to why Ms. Freeman received some but not all of the items mailed to her at the address listed on her petition.

of the date of the hearing, she had no idea what the status of bankruptcy was. She specifically did not know if her bankruptcy was final or whether it had been filed under the new or old law. Ms. Tittle testified that she called Mr. Angeleri numerous times, that he never returned her phone calls, but that she simply continued to call him until she got him. She also testified that whenever she asked him about the notices and orders she received from the Court, he told her he would take care of things and not to worry.

Ms. Tittle explained that she hired Mr. Angeleri as her counsel because of his price; she had seen his advertisement in the Thrifty Nickel newspaper. She explained that she did meet with him individually, and he told her that he had not been practicing long, but she thought he would be "more eager and willing to please the clients, you know, with him being young and new." Transcript, p. 37.

### Myreon Slater, Debtor/Client of Mr. Angeleri

Debtor Myreon Slater stated that he had simply not heard from Mr. Angeleri in some time. At the hearing, Mr. Slater was informed that his case had been dismissed. Mr. Angeleri had filed an insufficient motion to reinstate [5] Mr. Slater's case, and although the Court notified Mr. Angeleri of the deficiencies in his motion and how to cure them, he had not done so, and Mr. Slater's case had not been reinstated. Mr. Slater stated that he attempted to call Mr. Angeleri several times but that Mr. Angeleri did not return any of his phone calls. Mr. Slater was also given a Seattle cell phone number to reach Mr. Angeleri but he could not reach him there either. Mr.

Slater explained that he went to Mr. Angeleri because he saw his billboard on Crystal Hill Road.

### Mr. Angeleri's Response

In response to these debtors' statements, Mr. Angeleri explained that he gave his clients his office number and also his cell number, which is a Washington phone number, to use in case of emergency. He stated that he had been having lots of problems getting messages on his cell phone. He said that he did not remember getting any messages from Ms. Freeman or Mr. Slater, but he did recall a couple of messages from Ms. Tittle and Ms. Tittle's daughter. Mr. Angeleri said that he had tried to call Ms. Freeman and Mr. Slater and left messages for them, or got no answer. Mr. Angeleri also stated that he had instructed his secretary to call his clients when their cases were dismissed and to inform them that he was taking steps to reinstate the cases. He specifically stated that he did let Mr. Slater know that his case was dismissed and had not been reinstated, but he did not have documentation with him proving this because he just tried to call debtors when their cases were dismissed.

In response to the Court's questions regarding how he charged clients, Mr. Angeleri explained that he took money from each client who comes to see him, but not always in a sufficient amount to pay the filing fee. He explained that the filing fee has to be paid before the debtor's first meeting of creditors, which is usually a month after they file their petition, if the debtor files an application to pay the filing fee in installments.[6] The minimum

---

5. "Reinstate" is the term commonly used to set aside an order of dismissal.

6. Pursuant to Fed. R. Bankr.P. 1006, the filing fee prescribed by 28 U.S.C. § 1930 must be paid with the bankruptcy petition unless an application to pay filing fee in installments is filed which states that the debtor is unable to pay the filing fee except in installments and also states that the debtor has not paid the

amount he accepts from a debtor is $175, and he informs the Debtors they must pay the filing fee of $209 before the first meeting of creditors. Before the new law came into effect, his fee was $350 in addition to the $209 filing fee. Mr. Angeleri explained that his clients could pay him the entire $559 when they first met, or just $175 to get the paperwork started. He stated that he does inform his clients that if they do not pay the filing fee, their cases will be dismissed. He also stated that he is now requiring the filing fee to be paid up front.

In response to the Court's questioning regarding his background, Mr. Angeleri testified that he took a bankruptcy course and worked in the bankruptcy clinic while in law school. He testified he purchased the billboard in late September after opening his practice in May or June. He also placed an ad in the Thrifty Nickel, a regional want ad publication. After purchasing the billboard advertisement, Mr. Angeleri testified his practice picked up "enormously" and at that time, he hired an experienced staff person and a college student to help with other office tasks. Transcript, p. 67. He only turned away work the last weekend before the new bankruptcy law came into effect. He testified that he always attempted to return phone calls.

In response to Mr. Hollis' statements, Mr. Angeleri stated that he believed he did correct many of his initial mistakes in the cases he filed prior to the onslaught of cases filed on the eve of the new bankruptcy law taking effect. Specifically, he stated:

> I do admit that the first half dozen, ten cases that I filed did have problems . . .

But in the weeks prior to the deadline, the ones that I did file when I—when I had time to do it and do it my—you know, to look over everything, you know, maybe half a dozen a week, or so, on the previous maybe four to five weeks before the final week had relatively few or no errors. It was the hundred or so that I filed the last weekend that were rife with errors.

Transcript, pp. 73–74. Mr. Angeleri also stated that he had not continued to file cases since the new law took effect, except for a few emergency cases.[7]

After being asked to address the other cases listed in the Court's Order to Show Cause, Mr. Angeleri testified that regarding the problems in Ms. Bost's case, Ms. Bost's name was put on another person's filing information[8] when saving a client's file as a PDF document in order to upload it into the ECF system. Mr. Angeleri stated that he contacted Ms. Bost about the dismissal of her case and told her that he would file a motion to reinstate on her behalf. At the time of the hearing, Mr. Angeleri did not think Ms. Bost's case had been reinstated yet.

With respect to the Ellis's, Mr. Angeleri put Mr. and Mrs. Ellis in bankruptcy, but he represented only Ms. Ellis. He filed their joint petition without signatures from either of them. Mr. Angeleri believes his secretary may have accidentally filed bankruptcy on behalf of Mr. Ellis in addition to Ms. Ellis by clicking the joint icon instead of the individual icon despite his instructions to file only on behalf of Ms.

---

attorney for services in connection with the case.

7. An ECF inquiry reveals that Mr. Angeleri has in fact filed only five bankruptcy cases since October 17, 2005, in the Eastern District of Arkansas, and two bankruptcy cases

since October 17, 2005, in the Western District of Arkansas.

8. That is, Ms. Bost's name was placed on documents with another person's financial information.

Ellis. He believes missing signatures were due to his old bankruptcy software.

Mr. Angeleri did not have anything to add to the Court's summary and brief review of the docket in Ms. Hanbrick's and Ms. Hardcastle's cases. Mr. Angeleri did not have anything to add to the Court's summary of the Kelleys' case, except to say that he ultimately filed signed schedules but he did not believe the case had been reinstated yet.

## CASE NARRATIVES

During the hearing, the Court attempted to determine whether the problems listed in the Court's Order to Show Cause had been cured. The Court fully expected Mr. Angeleri would be prepared to provide these explanations at the Show Cause Hearing. He was not. He brought none of the Debtors' files or case dockets with him, and could not provide the Court with current information as to the status of his clients' cases. The following summaries outline the deficiencies and the actions taken in response to those deficiencies in each of the Debtors' cases.

### A. Mary Bost, 4:05–bk–28537.

Mary Bost's chapter 7 bankruptcy petition was filed October 16, 2005. No filing fee was paid at that time, and only a skeleton petition was filed—that is, no schedules or statement of financial affairs was filed. The petition was not signed by Ms. Bost or Mr. Angeleri. A *Statement Pursuant to Rule 2016(B)* [9] (hereinafter referred to as "**Attorney Disclosure of Compensation**") regarding payment of attorney fees and the filing fee was filed indicating that Ms. Bost had not paid the filing fee, but had already paid Mr. Angeleri $350, the full amount of compensation to be paid in connection with the case. This statement was not signed by Mr. Angeleri.

On October 20, 2005, the clerk's office entered an *Order Regarding Deficiencies* stating that the case would be dismissed unless: the creditor matrix was filed within five business days of the filing of the petition; the Summary of Schedules, Schedules A through J, Social Security Number (Official Form 21), Statement of Financial Affairs, Unsworn Declaration for Financial Affairs,[10] and Unsworn Declaration (perjury penalty) [11] were filed within

9. Section 329 of the Bankruptcy Code generally requires an attorney representing a debtor to file with the court a statement of the compensation paid or agreed to be paid for services rendered or to be rendered to the debtor in connection with the case. Federal Rule of Bankruptcy Procedure 2016(b) generally requires a debtor's attorney to file such statement within 15 days after the bankruptcy petition is filed.

10. The "Unsworn Declaration for Financial Affairs" refers to the "Declaration Under Penalty of Perjury by Individual Debtor" in which the debtor declares under penalty of perjury that he or she has read the foregoing statement of financial affairs and any attachments thereto and that they are true and correct to the best of the debtor's knowledge, information and belief. For the remainder of this

Order, the Unsworn Declaration for Financial Affairs or Declaration Under Penalty of Perjury by Individual Debtor along with the Statement of Financial Affairs will collectively be referred to as the "**Statement of Financial Affairs with Declaration.**"

11. The "Unsworn Declaration (perjury penalty)" refers to the "Declaration Concerning Debtor's Schedules" in which the debtor declares under penalty of perjury that he or she has read the foregoing summary and schedules and that they are true and correct to the best of the debtor's knowledge, information and belief. For the remainder of this Order, the Unsworn Declaration (perjury penalty) or Declaration Concerning Debtor's Schedules along with the Summary of Schedules will collectively be referred to as the "**Summary of Schedules with Declaration.**"

15 days of the filing of the petition; the missing signatures from the petition and Attorney Disclosure of Compensation were provided within 15 days of the filing of the petition; the Statement of Intention was filed within 30 days of the filing of the petition; and the filing fee was paid on or before the date of the first setting of the first meeting of creditors.[12] Also, on October 20, 2005, the clerk's office entered a *Memorandum of Document Deficiency* stating that the "Social Security Number electronically entered was either incomplete or the last four digits found on the petition didn't match what was electronically entered."[13] The Memorandum went on to provide instructions on how to correct the social security number, and stated that Official Form 21 needed to be filed within 48 hours of the date of the Memorandum. On October 24, 2005, BNC Certificates of Mailing were entered showing that both the *Order Regarding Deficiencies* and *Memorandum of Document Deficiency* were mailed first class to both Ms. Bost and Mr. Angeleri on October 23, 2005. (Any attorney who is a registered ECF user receives electronic notification (*i.e.*, an e-mail) for every item filed in every case in which they are listed as a party on the day the item is docketed. Mr. Angeleri is a registered ECF user, and accordingly, he was sent such electronic notifications of all items filed in

addition to the first class mail sent by BNC (the Bankruptcy Noticing Center)).

On October 24, 2005, docket entry number 10 was made indicating that Form B21 was submitted to the court's dropbox,[14] and the Debtor's social security number had been modified. Also, on October 24, 2005, a docket entry was made showing that the creditor matrix had been filed.

On October 26, 2005, Mr. Angeleri filed an *Application to Pay Filing Fee in Installments* providing that the debtor was unable to pay the filing fee except in installments, and that the debtor had not paid Mr. Angeleri for services provided or to be provided in connection with the case (despite the $350 reportedly paid to Mr. Angeleri as stated in the *Attorney Disclosure of Compensation* previously filed and his testimony that he never accepted clients without at least a $175 payment to get the paperwork started). The same day, a "text order"[15] was entered granting the application and providing that the debtor had until the first date set for the first meeting of creditors to pay the filing fee. The first meeting of creditors was initially set for November 18, 2005, pursuant to a notice issued on October 17, 2005.

On November 1, 2005, Mr. Angeleri filed a motion to extend deadline to file schedules due to the high volume of clients he

---

**12.** *See* Fed. R. Bankr.P. 1007(c) regarding the time limits for filing the information required by 11 U.S.C. § 521. *See* Fed. R. Bankr.P. 1006(b) and General Order 13 regarding the payment of the filing fee in installments before the date first set for the first meeting of creditors.

**13.** Federal Rule of Bankruptcy Procedure 1007(f) provides, in part:

An individual debtor shall submit a verified statement that sets out the debtor's social security number, or states that the debtor does not have a social security number. In

a voluntary case, the debtor shall submit the statement with the petition.

**14.** The "dropbox" is a general purpose e-mail address used by the clerk's office to receive corrected versions of certain documents and/or missing documents. When received in the dropbox, such documents are then docketed by the individual in the clerk's office designated for docketing matters in a particular case.

**15.** A "text order" is a docket entry that includes the entire order within the docket text; no document is attached.

"experienced ... right before deadline." [16] The Court granted that motion on November 3, 2005, giving Mr. Angeleri until November 15, 2005, to file all remaining schedules and statements. On November 16, 2005, a Statement of Intent was filed by Mr. Angeleri on behalf of Ms. Bost. Also on November 16, 2005, schedules were filed on behalf of Ms. Bost, but they were not her schedules—they were the schedules for Michael and Connie Boger. The docket entry for the schedules was modified by the clerk's office on November 18, 2005, to state: "ERROR: INCORRECT PDF ATTACHED. NAME ON DOCUMENT DOES NOT MATCH NAME ON CASE." The Clerk's office also issued a *Memorandum of Document Deficiency* on November 18, 2005, which notified Mr. Angeleri that the name on the schedules did not match the debtor's name, and that the correct pdf file should be submitted to the Court within 48 hours of the date of the Memorandum. The BNC Certificate of Service shows that this Memorandum was mailed first class to Mr. Angeleri on November 20, 2005.

On November 21, 2005, three days after the date first set for the Debtor's first meeting of creditors, the filing fee was paid in full. On December 14, 2005, the clerk's office then entered an *Order to Show Cause* informing all interested parties that the deficiencies cited in the *Order Regarding Deficiencies* (specifically, the Debtor's schedules, signed petition, and Attorney Disclosure of Compensation) had not been cured, and that accordingly, all interested parties had 15 days to object to the case's dismissal for failure to comply with the Bankruptcy Code and Rules.[17] The Order stated that failure to object would result in the case's dismissal without further notice from the Court. The BNC Certificate of Service shows that this Order was mailed to Mr. Angeleri on December 16, 2005.

On January 5, 2006, Ms. Bost's case was dismissed for failure to abide by the Court's orders to cure the deficiencies outlined in those orders. The Order dismissing the case was mailed first class to Mr. Angeleri and Ms. Bost on January 7, 2006. On January 16, 2006, Mr. Angeleri filed a *Motion to Reinstate* seeking to set aside the dismissal order in Ms. Bost's case. Mr. Angeleri also filed a *Notice of Opportunity to Object to Motion to Reinstate* informing interested parties that they had 20 days to object by filing with the court a written request for a hearing, or the court may grant the relief without holding a hearing.[18] On January 22, 2006, Mr. Angeleri filed a petition signed by both Ms. Bost and Mr. Angeleri, Schedules A through J, Summary of Schedules with Declaration, Statement of Financial Affairs with Declaration, a signed Statement of Intent, and a signed Attorney Disclosure of Compensation (thus, curing the remaining deficiencies in Ms. Bost's case). On February 8, 2006, an *Order Setting Aside Dismissal Order* was entered reinstating Ms. Bost's case. Ms. Bost's Order of Discharge was entered February 10, 2006.

### B. Lisa Ellis, 4:05–bk–28569.

The chapter 7 bankruptcy petition of Lisa Ellis and Christopher Ellis, joint

---

**16.** The deadline Mr. Angeleri refers to is the deadline for filing under the Bankruptcy Code prior to the effective date for most of the provisions added to the Bankruptcy Code or amended by BAPCPA, which was October 17, 2005.

**17.** Pursuant to 11 U.S.C. § 707(a), the Court may dismiss a chapter 7 case for cause after notice and hearing. A hearing is not required if sufficient opportunity for a hearing has been provided. *See* 11 U.S.C. § 102(1).

**18.** *See generally* 11 U.S.C. § 102(1).

debtors, was filed October 16, 2005. No filing fee was paid at that time, and only a skeleton petition was filed—that is, no schedules or statement of financial affairs was filed. The petition was not signed by Mr. or Ms. Ellis, or by their attorney, Mr. Angeleri. An *Attorney Disclosure of Compensation* was filed indicating that Mr. Ellis and Ms. Ellis had not paid the filing fee, but had already paid Mr. Angeleri $350, the full amount of compensation to be paid in connection with the case. This statement was not signed by Mr. Angeleri.

On October 20, 2005, the clerk's office entered an *Order Regarding Deficiencies* stating that the case would be dismissed unless: the creditor matrix was filed within five business days of the filing of the petition; the Summary of Schedules, Schedules A through J, Social Security Number (Official Form 21), Statement of Financial Affairs, Unsworn Declaration for Financial Affairs, and Unsworn Declaration (perjury penalty) were filed within 15 days of the filing of the petition; the missing signatures from the petition and Attorney Disclosure of Compensation were provided within 15 days of the filing of the petition; and the Statement of Intention was filed within 30 days of the filing of the petition. Also, on October 20, 2005, the clerk's office entered a *Memorandum of Document Deficiency* stating that the "Social Security Number electronically entered was either incomplete or the last four digits found on the petition didn't match what was electronically entered." The Memorandum also noted that "incorrect SSN information was entered into ECF," requested that the paperless event "Request for SSN Modification" be elec-

tronically filed, and stated that Official Form 21 needed to be filed within 48 hours of the date of the Memorandum. On October 24, 2005, BNC Certificates were entered showing that both the *Order Regarding Deficiencies* and *Memorandum of Document Deficiency* were mailed first class to Mr. Angeleri on October 23, 2005.

On October 24, 2005, docket entry # 11 was made, indicating that the social security number had been modified. However, Official Form 21 was not submitted to the court's e-mail dropbox until October 28, 2005.[19] Also on October 24, 2005, Mr. Angeleri filed a *Motion to Dismiss Debtor* requesting that Mr. Ellis be dismissed as a debtor. In this motion, Mr. Angeleri stated that Mr. Ellis was "inadvertently added" as a joint debtor and that Mr. Ellis did not intend to be a party to the bankruptcy petition. This motion was ultimately granted following a hearing, and an order dismissing Mr. Ellis as a debtor was entered on January 12, 2006.

On October 27, 2005, a docket entry was made showing that the creditor matrix had been filed. This docket entry was made on the Court's docket. Also on October 27, 2005, Mr. Angeleri filed an *Application to Pay Filing Fee in Installments* providing that the debtor was unable to pay the filing fee except in installments, and that the debtor had not paid Mr. Angeleri for services provided or to be provided in connection with the case (despite the $350 reportedly paid to Mr. Angeleri as stated in the *Attorney Disclosure of Compensation* previously filed and despite his testimony that he never accepted clients without at least a $175 payment to get the paperwork started).[20] The same day, a

19. The docket entry showing that Official Form 21 was received in this case was made on April 3, 2006.

20. This application included the electronic signatures of both Mr. and Mrs. Ellis, although Mr. Angeleri never had the authority to file anything on behalf of Mr. Ellis.

text Order was entered granting the application and providing that the debtor had until the first date set for the first meeting of creditors to pay the filing fee. The first meeting of creditors was initially set for November 15, 2005, pursuant to a notice issued on October 18, 2005.

On November 1, 2005, Mr. Angeleri filed Schedules A through J, the Summary of Schedules, Declaration Concerning Debtor's Schedules, an undated Statement of Intention signed by Ms. Ellis, and a Statement of Financial Affairs and Declaration signed by Ms. Ellis. On November 17, 2005, two days after the date first set for the first meeting of creditors, the filing fee was paid in full. On December 13, 2005, almost two months after the petition was originally filed, Mr. Angeleri filed a petition signed by both Ms. Ellis and Mr. Angeleri and the Attorney Disclosure of Compensation signed by Mr. Angeleri. He also re-filed Schedules A through J, the Summary of Schedules, Declaration Concerning Debtor's Schedules, an undated Statement of Intention signed by Ms. Ellis, and a Statement of Financial Affairs and Declaration signed by Ms. Ellis. Mr. Angeleri did not pay the required fee for filing the aforementioned documents on December 13, 2005; however, this fee was paid on December 20, 2005. Ms. Ellis received her discharge on April 12, 2006, and her case was closed April 24, 2006.

### C. Danielle Freeman, 4:05–bk–28274.

Danielle Freeman's chapter 7 bankruptcy petition was filed October 16, 2005. No filing fee was paid at that time,[21] and only a skeleton petition was filed—that is, no schedules or statement of financial affairs was filed. With the petition, Mr. Angeleri filed an *Application to Pay Filing Fee In*

*Installments* providing that the debtor was unable to pay the filing fee except in installments, and that the debtor had not paid Mr. Angeleri for services provided or to be provided in connection with the case (despite Mr. Angeleri's testimony that he never accepted clients without at least a $175 payment to get the paperwork started). However, no order was entered granting the application. Mr. Angeleri never filed an Attorney Disclosure of Compensation in Ms. Freeman's case.

On October 19, 2005, the clerk's office entered an *Order Regarding Deficiencies* stating that the case would be dismissed unless: the creditor matrix was filed within five business days of the filing of the petition; the Summary of Schedules, Schedules A through J, Attorney Disclosure of Compensation, Statement of Financial Affairs, Unsworn Declaration for Financial Affairs, and Unsworn Declaration (perjury penalty) were filed within 15 days of the filing of the petition; the missing signatures from the petition were provided within 15 days of the filing of the petition; the Statement of Intention was filed within 30 days of the filing of the petition; and the filing fee was paid on or before the date of the first setting of the first meeting of creditors. On October 23, 2005, a BNC Certificate of Mailing was entered showing that the *Order Regarding Deficiencies* was mailed first class to Mr. Angeleri on October 22, 2005.

On October 27, 2005, the clerk's office entered a *Certification of Clerk and Order of Dismissal for Failure to Timely File Schedules* dismissing Ms. Freeman's case for failure to submit the information required by the *Order Regarding Deficiencies*. The timing of this Order indicates that no creditor matrix was filed in this

---

**21.** Additionally, the case was dismissed so early that the initial notice setting the first meeting of creditors was not sent out. A first

meeting of creditors was not scheduled until January 24, 2006, and by that time, the filing fee had been paid.

case within the five day period outlined in the *Order Regarding Deficiencies.* On October 30, 2005, a BNC Certificate of Mailing was entered showing that the *Certification of Clerk and Order of Dismissal for Failure to Timely File Schedules* was mailed first class to Mr. Angeleri and Ms. Freeman on October 29, 2005.

Ms. Freeman's deficient schedules were filed on November 1, 2005. The same day, Mr. Angeleri also filed a *Motion to Reinstate* seeking to set aside the dismissal order in Ms. Freeman's case alleging that he had filed the required creditor matrix on October 27, 2005.[22] Mr. Angeleri also filed a *Notice of Opportunity to Object to Motion to Reinstate* informing interested parties that they had until November 18, 2005, to object by filing with the court a written request for a hearing, or the court may grant the relief without holding a hearing. However, according to a *Memorandum of Document Deficiency* entered by the clerk's office on November 2, 2005, Mr. Angeleri did not sign the *Notice of Opportunity to Object to Motion to Reinstate* he filed on November 1, 2005. The *Memorandum of Document Deficiency* gave Mr. Angeleri 48 hours to submit a signed Notice to the Court's e-mail drop-box. A BNC Certificate of Mailing was entered on November 5, 2005, showing that the *Memorandum of Document Deficiency* was mailed first class to Mr. Angeleri on November 4, 2005. A clerk's office entry on the Court's docket dated November 14, 2005, indicates that Mr. Angeleri represented to a clerk's office employee that he would e-mail a signed notice. On November 15, 2005, a docket entry was made showing that the signed Notice was received and docketed. (In fact, it was substituted for the original unsigned notice.)

On November 29, 2005, the Court issued an *Order to Submit Order* to Mr. Angeleri giving him ten days to submit a proposed order to the Court on his Motion to Reinstate because no objections had been filed during the objection period. On December 13, 2005, a clerk's staff employee made a docket entry that she had e-mailed Judge Evans's chambers regarding the fact that Mr. Angeleri had still not submitted a proposed order to reinstate Ms. Freeman's case. An order was finally submitted and entered on December 19, 2005, reinstating Ms. Freeman's case. The chapter 7 filing fee was then paid on December 21, 2005. Ms. Freeman received her discharge on April 12, 2006.

### D. Lindsey Hanbrick, 4:05–bk–28500.

Lindsey Hanbrick's chapter 7 bankruptcy petition was filed October 16, 2005. No filing fee was paid at that time, and only a skeleton petition was filed—that is, no schedules or statement of financial affairs was filed. The same day, Mr. Angeleri filed an *Application to Pay Filing Fee in Installments* providing that the debtor was unable to pay the filing fee except in installments, and that the debtor had not paid Mr. Angeleri for services provided or to be provided in connection with the case (despite Mr. Angeleri's testimony that he never accepted clients without at least a $175 payment to get the paperwork started).[23] A text Order was entered granting the application and providing that the debtor had until the first date set for the

22. While the case docket does not reflect when the creditor matrix was filed, an internal ECF report shows that the creditor matrix in Ms. Freeman's case was in fact filed on October 27, 2005, by Mr. Angeleri.

23. Mr. Angeleri never filed an Attorney Disclosure of Compensation in Ms. Hanbrick's case.

first meeting of creditors to pay the filing fee.[24]

On October 17, 2005, the clerk's office entered an *Amended Order Regarding Deficiencies*[25] stating that the case would be dismissed unless: the creditor matrix was filed within five business days of the filing of the petition; the Summary of Schedules, Schedules A through J, Attorney Disclosure of Compensation, Social Security Number (Official Form 21), Statement of Financial Affairs, Unsworn Declaration for Financial Affairs, and Unsworn Declaration (perjury penalty) were filed within 15 days of the filing of the petition; the Statement of Intention was filed within 30 days of the filing of the petition; and the filing fee was paid on or before the date of the first setting of the first meeting of creditors. Also, on October 17, 2005, the clerk's office entered a *Memorandum of Document Deficiency* stating that the "Social Security Number electronically entered was either incomplete or the last four digits found on the petition didn't match what was electronically entered." The Memorandum provided instructions on how to correct the social security number, and stated that Official Form 21 needed to be filed within 48 hours of the date of the Memorandum. On October 20, 2005, BNC Certificates of Mailing were entered showing that both the *Amended Order Regarding Deficiencies* and *Memorandum of Document Deficiency* were mailed first class to Mr. Angeleri on October 19, 2005.

On October 25, 2005, Mr. Angeleri filed a motion to extend deadline to file schedules stating that he needed more time to locate creditors than the time allowed to file a complete creditor matrix. The Court granted that motion on November 3, 2005, giving Mr. Angeleri until November 10, 2005, to file the creditor matrix. On November 14, 2005, the clerk's office entered a *Certification of Clerk and Order of Dismissal for Failure to Timely File Schedules* dismissing Ms. Hanbrick's case for failure to submit the information required by the *Order Regarding Deficiencies.* The docket indicates that no creditor matrix was filed in this case before the deadline of November 10, 2005. On November 17, 2005, a BNC Certificate of Mailing was entered showing that the *Certification of Clerk and Order of Dismissal for Failure to Timely File Schedules* was mailed first class to Mr. Angeleri and Ms. Hanbrick on November 16, 2005.

Meanwhile, on November 14, 2006, Mr. Angeleri had filed the remaining Schedules A through J, Summary of Schedules with Declaration, Statement of Financial Affairs with Declaration, a signed Statement of Intent, and the creditor matrix.[26]

On November 24, 2005, Mr. Angeleri filed a *Motion to Reinstate* seeking to set aside the dismissal order in Ms. Hanbrick's case alleging that he had since filed the required creditor matrix. Mr. Angeleri also filed a *Notice of Opportunity to Object to Motion to Reinstate* informing interested parties that they had 20 days to

---

**24.** Because this case was dismissed shortly after it was filed, the initial notice setting the first meeting of creditors was not sent out. A first meeting of creditors was not scheduled until after the case was reinstated on January 12, 2006, and the filing fee was paid on January 16, 2006.

**25.** Earlier the same day, the Clerk's office had entered an *Order Regarding Deficiencies* (docket entry # 5) which appears to be identical to the *Amended Order Regarding Deficiencies* (docket entry # 7).

**26.** While the case docket does not reflect when the creditor matrix was filed, an internal ECF report shows that the creditor matrix in Ms. Hanbrick's case was filed on November 14, 2005.

object by filing with the court a written request for a hearing, or the court may grant the relief without holding a hearing. No objections were filed, and accordingly, on December 27, 2005, the Court issued an *Order to Submit Order* to Mr. Angeleri giving him ten days to submit a proposed order to the Court on his Motion to Reinstate. On January 11, 2006, a clerk's staff employee made a docket entry that Judge Evans's chambers had been e-mailed regarding the fact that Mr. Angeleri had still not submitted a proposed order to reinstate Ms. Hanbrick's case. An order was finally submitted and entered on January 12, 2006, reinstating Ms. Hanbrick's case. The chapter 7 filing fee was then paid on January 16, 2006. Ms. Hanbrick received her discharge on April 4, 2006.

### E. Kristen Hardcastle, 4:05–bk–28229.

Kristen Hardcastle's chapter 7 bankruptcy petition was filed October 16, 2005. No filing fee was paid at that time and only a skeleton petition was filed—that is, no schedules or statement of financial affairs was filed. An *Attorney Disclosure of Compensation* was filed indicating that Ms. Hardcastle had not paid the filing fee, but had already paid Mr. Angeleri $350, the full amount of compensation to be paid in connection with the case. On October 19, 2005, Mr. Angeleri filed an *Application to Pay Filing Fee in Installments* providing that the debtor was unable to pay the filing fee except in installments, and that the debtor had not paid Mr. Angeleri for services provided or to be provided in connection with the case (despite the $350 reportedly paid to Mr. Angeleri as stated in the *Attorney Disclosure of Compensation* previously filed and despite his testimony that he never accepted clients without at least a $175 payment to get the paperwork started). The same day, a text Order was entered granting the application and providing that debtor had until the first date set for the first meeting of creditors to pay the filing fee.

On October 21, 2005, the clerk's office entered an *Order Regarding Deficiencies* stating that the case would be dismissed unless: the creditor matrix was filed within five business days of the filing of the petition; the Summary of Schedules, Schedules A through J, Statement of Financial Affairs, Unsworn Declaration for Financial Affairs, Unsworn Declaration (perjury penalty) and the Attorney Disclosure of Compensation were filed within 15 days of the filing of the petition; and the Statement of Intention was filed within 30 days of the filing of the petition. Also on October 21, 2005, the clerk's office entered an *Amended Order Regarding Deficiencies* which removed the Attorney Disclosure of Compensation from the list of deficient documents. On October 25, 2005, BNC Certificates of Mailing were entered showing that both the *Order Regarding Deficiencies* and the *Amended Order Regarding Deficiencies* were mailed first class to both Ms. Hardcastle and Mr. Angeleri on October 24, 2005.

On October 26, 2005, the clerk's office entered a *Certification of Clerk and Order of Dismissal for Failure to Timely File Schedules* dismissing Ms. Hardcastle's case for failure to submit the information required in the *Order Regarding Deficiencies* and the *Amended Order Regarding Deficiencies*. The timing of this Order indicates that no creditor matrix was filed in this case within the five day period outlined in both the *Order Regarding Deficiencies* and the *Amended Order Regarding Deficiencies*. On October 29, 2005, a BNC Certificate of Mailing was entered showing that the *Certification of Clerk and Order of Dismissal for Failure to Timely File Schedules* was mailed first class to Mr. Angeleri and Ms. Hardcastle on October 28, 2005.

Ms. Hardcastle's deficient schedules were filed on November 1, 2005. That same day, Mr. Angeleri also filed a *Motion to Reinstate* seeking to set aside the dismissal order in Ms. Hardcastle's case alleging that Mr. Angeleri had failed to file the required creditor matrix, but that he had since filed the creditor matrix. According to docket entry # 15, the creditor matrix was filed November 1, 2005. Mr. Angeleri also filed a *Notice of Opportunity to Object to Motion to Reinstate* informing interested parties they had 20 days to object by filing with the court a written request for a hearing, or the court may grant relief without holding a hearing. However, according to a *Memorandum of Document Deficiency* entered by the clerk's office on November 2, 2005, Mr. Angeleri did not sign the *Notice of Opportunity to Object to Motion to Reinstate* he filed on November 1, 2005. A BNC Certificate of Mailing was entered on November 5, 2005, showing that the *Memorandum of Document Deficiency* was mailed first class to Mr. Angeleri on November 4, 2005. On November 14, 2005, a docket entry was made showing that the signed Notice was received and docketed.

On December 21, 2005, the Court issued an *Order to Submit Order* to Mr. Angeleri giving him ten days to submit a proposed order to the Court on his *Motion to Reinstate* because no objections had been filed during the objection period. A BNC Certificate of Mailing was entered on December 24, 2005, showing that the *Order to Submit Order* was mailed first class to Mr. Angeleri on December 23, 2005. On January 6, 2006, a clerk's staff employee made a docket entry that she e-mailed Judge Evans's chambers regarding the fact that Mr. Angeleri still had not submitted a proposed order to reinstate Ms. Hardcastle's case. An order was finally submitted and entered on January 12, 2006, reinstating Ms. Hardcastle's case.

On January 13, 2006, the clerk's office entered a *Certification of Clerk and Order Dismissing Case for Failure to Timely Pay Filing Fee* dismissing Ms. Hardcastle's case for failure to pay the filing fee.[27] A BNC Certificate of Mailing was entered on January 16, 2006, showing that the *Certification of Clerk and Order Dismissing Case for Failure to Timely Pay Filing Fee* was mailed first class to Mr. Angeleri and Ms. Hardcastle on January 15, 2006.

On January 21, 2006, Mr. Angeleri filed a second *Motion to Reinstate Case* seeking to set aside the *Certification of Clerk and Order Dismissing Case for Failure to Timely Pay Filing Fee*. In this second *Motion to Reinstate Case*, Mr. Angeleri alleged that he had now paid the filing fee. On February 16, 2006, a clerk's staff employee made a docket entry that she had contacted Judge Evans's chambers regarding the fact that Mr. Angeleri still had not paid the filing fee, despite what he alleged in his second *Motion to Reinstate Case*. The chapter 7 filing fee was finally paid on February 16, 2006.

On February 17, 2006, the Court issued a second *Order to Submit Order* giving Mr. Angeleri ten days to submit a proposed order to the Court on his second *Motion to Reinstate Case* because no objections had been filed. A BNC Certificate of Mailing was entered on February 20, 2006, showing that the second *Order to Submit Order* was mailed first class to Mr. Angeleri on February 19, 2006. On March 1, 2006, a clerk's staff employee made a

---

**27.** According to docket entry # 2, the notice containing the initial date of the first meeting of creditors was not sent, because this case was dismissed on October 26, 2005. The notice that was subsequently sent scheduled the first meeting of creditors for January 12, 2006, which set a deadline for the Debtor to pay the filing fee.

docket entry that she had e-mailed Judge Evans's chambers regarding the fact that Mr. Angeleri still had not submitted a proposed order to reinstate Ms. Hardcastle's case. An order was finally submitted and entered on March 2, 2006, reinstating Ms. Hardcastle's case. Ms. Hardcastle received her discharge on March 16, 2006.

### F. Karry Dean and Deanna Carol Kelley, 4:05–bk–28435.

The chapter 7 bankruptcy petition of Karry Dean Kelley and Deanna Carol Kelley, joint debtors, was filed October 16, 2005. No filing fee was paid at that time, and only a skeleton petition was filed— that is, no schedules or statement of financial affairs was filed. That same day, Mr. Angeleri filed an *Application to Pay Filing Fee in Installments* providing that the debtor was unable to pay the filing fee except in installments, and that the debtor had not paid Mr. Angeleri for services provided or to be provided in connection with the case (despite the $350 reportedly paid to Mr. Angeleri as stated in the *Attorney Disclosure of Compensation* subsequently filed and despite his testimony that he never accepted clients without at least a $175 payment to get the paperwork started). On October 20, 2005, a text Order was entered granting the application and providing that debtor had until the first date set for the first meeting of creditors to pay the filing fee. The first meeting date was initially set for November 15, 2005.

On October 20, 2005, the clerk's office entered an *Order Regarding Deficiencies* stating that the case would be dismissed unless: the creditor matrix was filed within five business days of the filing of the petition; the Summary of Schedules, Schedules A through J, the Attorney Disclosure of Compensation, Statement of Financial Affairs, Unsworn Declaration for Financial Affairs, and Unsworn Declaration (perjury penalty) were filed within 15 days of the filing of the petition; and the Statement of Intention was filed within 30 days of the filing of the petition. On October 24, 2005, a BNC Certificate of Mailing was entered showing that the *Order Regarding Deficiencies* was mailed first class to Mr. Angeleri, Ms. Kelley, and Mr. Kelley on October 23, 2005. On October 26, 2005, a docket entry was made showing that the creditor matrix was filed.

The Kelley's deficient schedules were filed on November 1, 2005. However, according to a *Memorandum of Document Deficiency* entered by the clerk's office on November 2, 2005, the Declaration Concerning Debtor's Schedules and the Statement of Financial Affairs, which were filed the previous day, were not signed. The *Memorandum of Document Deficiency* indicated that the signed documents should be submitted to the Court within 48 hours of the Memorandum. A BNC Certificate of Mailing was entered on November 5, 2005, showing that the *Memorandum of Document Deficiency* was mailed first class to Mr. Angeleri, on November 4, 2005.

A clerk's office entry on the docket dated November 10, 2005, indicates that Judge Evans's chambers was notified regarding the *Memorandum of Document Deficiency*. On November 17, 2005, two days after the date first set for the first meeting of creditors, the chapter 7 filing fee was paid in full.

On January 9, 2006, the Court issued an *Order to Show Cause Regarding Deficiencies* informing all interested parties that the deficiencies cited in the *Memorandum of Document Deficiencies* had not been cured, and that accordingly, all interested parties had 15 days to object to the case's dismissal for failure to comply with the Bankruptcy Code and Rules. The Order

stated that failure to object would result in the case's dismissal without further notice from the Court. The BNC Certificate of Mailing indicates that this Order was mailed to Mr. Angeleri, Ms. Kelley, and Mr. Kelley on January 11, 2006. On February 7, 2006, Mr. Angeleri filed the signed documents, including an *Attorney Disclosure of Compensation* indicating that the Kelleys had paid Mr. Angeleri $350 prior to paying the filing fee, curing the deficiencies noted in the *Memorandum of Document Deficiencies*. The Kelleys received a discharge on February 21, 2006.

### G. Myreon Slater, 4:05–bk–28451.[28]

Myreon Slater's chapter 7 bankruptcy petition was filed October 16, 2005. No filing fee was paid at that time, and only a skeleton petition was filed—that is, no schedules or statement of financial affairs was filed. The same day, Mr. Angeleri filed an *Application to Pay Filing Fee in Installments* providing that the debtor was unable to pay the filing fee except in installments, and that the debtor had not paid Mr. Angeleri for services provided or to be provided in connection with the case (despite the $350 reportedly paid to Mr. Angeleri as stated in the *Attorney Disclosure of Compensation* subsequently filed and despite his testimony that he never accepted clients without at least a $175 payment to get the paperwork started). A text Order was entered granting the application and providing that the debtor had until the first date set for the first meeting of creditors to pay the filing fee.[29]

On October 20, 2005, the clerk's office entered an *Order Regarding Deficiencies* stating that the case would be dismissed unless: the creditor matrix was filed within five business days of the filing of the petition; the Summary of Schedules, Schedules A through J, Attorney Disclosure of Compensation, Statement of Financial Affairs, Unsworn Declaration for Financial Affairs, and Unsworn Declaration (perjury penalty) were filed within 15 days of the filing of the petition; the Statement of Intention was filed within 30 days of the filing of the petition; and the filing fee was paid on or before the date of the first setting of the first meeting of creditors. On October 24, 2005, a BNC Certificate of Mailing was entered showing that the *Order Regarding Deficiencies* was mailed first class to Mr. Angeleri and Mr. Slater on October 23, 2005.

On October 28, 2005, the clerk's office entered a *Certification of Clerk and Order of Dismissal for Failure to Timely File Schedules* dismissing Mr. Slater's case for failure to submit the information required by the *Order Regarding Deficiencies*. The timing of this Order indicates that no creditor matrix was filed in this case before the deadline of October 21, 2005. On October 30, 2005, a BNC Certificate of Mailing was entered showing that the *Certification of Clerk and Order of Dismissal for Failure to Timely File Schedules* was mailed first class to Mr. Angeleri and Mr. Slater on October 30, 2005.

On November 1, 2006, Mr. Angeleri filed the remaining Schedules A through J, Summary of Schedules with Declaration, Statement of Financial Affairs with Declaration, and a signed Statement of Intention. Also on November 1, 2005, Mr. Angeleri filed a *Motion to Reinstate* seeking to set aside the dismissal order in Mr. Slater's case alleging that he had since

---

**28.** The petition filed on Mr. Slater's behalf listed his name as "Slaten" but was later corrected to "Slater" by amended schedules.

**29.** The first meeting of creditors was not scheduled until February 7, 2006, after Mr. Slater's case was reinstated. The filing fee was then paid on February 8, 2006.

filed the required creditor matrix.[30] Mr. Angeleri also filed a *Notice of Opportunity to Object to Motion to Reinstate* informing interested parties that they had until September 9, 2005, to object by filing with the court a written request for a hearing, or the court may grant the relief without holding a hearing. However, because Mr. Angeleri did not sign the *Notice of Opportunity to Object to Motion to Reinstate* he filed on November 1, 2005, the clerk's office entered a *Memorandum of Document Deficiency* on November 2, 2005, giving Mr. Angeleri 48 hours to submit a signed Notice to the Court's e-mail dropbox. A BNC Certificate of Mailing was entered on November 5, 2005, showing that the *Memorandum of Document Deficiency* was mailed first class to Mr. Angeleri on November 4, 2005.

On November 2, 2005, a clerk's office employee made a remark on the Court's docket that the creditor matrix had still not been filed. The clerk's office also entered an *Order to Show Cause* informing all interested parties that the deficiencies cited in the *Order Regarding Deficiencies* had not been cured, and that accordingly, all interested parties had 15 days to object the case's dismissal for failure to comply with the Bankruptcy Code and Rules. The Order stated that failure to object would result in the case's dismissal without further notice from the Court. The BNC Certificate of Service shows that this Order was mailed to Mr. Angeleri on November 4, 2005.

On November 3, 2005, Mr. Angeleri filed an *Attorney Disclosure of Compensation* indicating that Mr. Slater had paid the filing fee,[31] and had paid Mr. Angeleri $350, the full amount of compensation to be paid in connection with the case. This statement was another deficiency Mr. Angeleri needed to cure to have the case reinstated in addition to the signed *Notice and Opportunity to Object* and missing creditor matrix (which was ultimately filed on November 14, 2005). Because no objections to Mr. Angeleri's *Motion to Reinstate* had been filed, the Court issued an *Order to Submit Order* on November 29, 2005, giving Mr. Angeleri ten days to submit a proposed order to the Court on his *Motion to Reinstate.* On November 29, 2006, a clerk's staff employee made a docket entry that Judge Evans's chambers had been e-mailed regarding the fact that Mr. Angeleri had still not submitted a signed *Notice and Opportunity to Object* to his motion to reinstate Mr. Slater's case. The Court then saw that the *Order to Submit Order* had been entered in error since Mr. Angeleri had never filed a signed *Notice of Opportunity to Object,* and the Court therefore entered an *Order Vacating Order to Submit Order and Order to Show Cause Why Motion to Reinstate Should Not be Denied For Failure to Notice Properly* on December 17, 2005. In that Order, the Court noted that in addition to Mr. Angeleri not signing the *Notice and Opportunity to Object* accompanying his motion to reinstate, Mr. Angeleri had provided an incorrect response time to his notice by providing that objections had to be filed by September 9, 2005, a date *preceding* the date of the motion by more than a month. The BNC Certificate of Service shows that this Order was mailed to Mr. Angeleri and Mr. Slater on December 17, 2005.

---

**30.** While the case docket does not reflect when the creditor matrix was filed, an internal ECF report shows that the creditor matrix in Mr. Slater's case was not filed until November 14, 2005.

**31.** Mr. Angeleri did not in fact pay the filing fee until February 8, 2006.

On December 15, 2005, Mr. Angeleri filed a signed *Notice of Opportunity to Object* which provided a twenty-day response time. No objections were filed, and on February 7, 2006, an order was entered reinstating Mr. Slater's case. The Court notes that this order was submitted only after the Court informed Mr. Angeleri at the Order to Show Cause Hearing that it was his failure to submit an order reinstating Mr. Slater's case that caused it to remain dismissed as of the hearing date. The filing fee was also finally paid on February 8, 2006. Provided no complaints objecting to Mr. Slater's discharge or seeking a determination of the dischargeability of a debt are filed by May 8, 2006, Mr. Slater should receive his discharge at that time.

### H. Janice Tittle, 4:05–bk–18863.

Janice Tittle filed her chapter 7 bankruptcy petition on July 11, 2005.[32] No filing fee was paid at that time, and only a skeleton petition was filed—that is, no schedules or statement of financial affairs was filed. Mr. Angeleri also filed an *Attorney Disclosure of Compensation* indicating that Ms. Tittle had paid $25 of the filing fee, but had already paid Mr. Angeleri $350, the full amount of compensation to be paid in connection with the case. In fact, the Court never received this $25 that Mr. Angeleri claimed he had paid. The same day, Mr. Angeleri filed an *Application to Pay Filing Fee in Installments* providing that the debtor was unable to pay the filing fee except in installments, and that the debtor had not paid Mr. Angeleri for services provided or to be provided in connection with the case (despite the $350 reportedly paid to Mr. Angeleri as stated in the *Attorney Disclosure*

*of Compensation* previously filed and despite his testimony that he never accepted clients without at least a $175 payment to get the paperwork started). A text Order was entered granting the application and providing that the debtor had until the first date set for the first meeting of creditors to pay the filing fee.

On July 12, 2005, the clerk's office entered an *Order Regarding Deficiencies* stating that the case would be dismissed unless: the creditor matrix was filed within five business days of the filing of the petition; the Summary of Schedules, Schedules A through J, Statement of Financial Affairs, Unsworn Declaration for Financial Affairs, and Unsworn Declaration (perjury penalty) were filed within 15 days of the filing of the petition; the Statement of Intention was filed within 30 days of the filing of the petition; and the filing fee was paid on or before the date of the first setting of the first meeting of creditors. On July 15, 2005, a BNC Certificate of Mailing was entered showing that the *Order Regarding Deficiencies* was mailed first class to Mr. Angeleri and Ms. Tittle on July 14, 2005.

On July 19, 2005, the clerk's office entered a *Certification of Clerk and Order of Dismissal for Failure to Timely File Schedules* dismissing Ms. Tittle's case for failure to submit the information required by the *Order Regarding Deficiencies*. The timing of this Order indicates that no creditor matrix was filed in this case within the five day period outlined in the *Order Regarding Deficiencies*. On July 22, 2005, a BNC Certificate of Mailing was entered showing that the *Certification of Clerk and Order of Dismissal for Failure to Timely*

---

**32.** Despite Mr. Angeleri's testimony that it was the rush of filings prior to the effective date of the BAPCPA amendments on October 17, 2005, that caused him to make so many

mistakes, Ms. Tittle's case, which was filed more than three months prior to the new law's effective date, illustrates the problems Mr. Angeleri had prior to the change in law.

*File Schedules* was mailed first class to Mr. Angeleri and Ms. Tittle on July 21, 2005.

Ms. Tittle's deficient schedules were filed on August 1, 2005. The same day, Mr. Angeleri also filed a *Motion to Reinstate* seeking to set aside the dismissal order in Ms. Tittle's case alleging that he had since filed the required schedules. While the case docket does not reflect that the creditor matrix had been filed (the cause for the initial dismissal of Ms. Tittle's case), an internal ECF report shows that the creditor matrix in Ms. Tittle's case was filed on August 1, 2005. However, Mr. Angeleri failed to file a *Notice of Opportunity to Object to Motion to Reinstate* informing interested parties that they had a certain amount of time to object to the motion by filing with the court a written request for a hearing. Accordingly, a member of Judge Evans's staff contacted Mr. Angeleri by telephone on August 2, 2005, and on August 8, 2005, leaving messages regarding the required Notice and Opportunity to Object. Docket entries were made on the Court's docket documenting these phone calls. On August 19, 2005, Mr. Angeleri filed the required *Notice and Opportunity to Object to Motion to Reinstate* giving parties until September 9, 2005, to object to the motion. On September 20, 2005, the Debtor's case was reinstated, and the Debtor's first meeting of creditors was scheduled for October 20, 2005.

On October 26, 2005, Ms. Tittle's case was dismissed once again for failure to pay the filing fee before the date scheduled for the first meeting of creditors. A BNC Certificate of Mailing was entered on October 29, 2005, showing that the *Certification of Clerk and Order of Dismissal for Failure to Timely Pay Filing Fee* was mailed first class to Mr. Angeleri and Ms.

Tittle on October 28, 2005. On November 1, 2005, Mr. Angeleri filed another *Motion to Reinstate* and a *Notice of Opportunity to Object to Motion to Reinstate* alleging that he had since paid the filing fee for Ms. Tittle's case. The case docket reflects that the full filing fee of $209 was paid on November 4, 2005. However, the case could not yet be reinstated because Mr. Angeleri did not sign the *Notice of Opportunity to Object to Motion to Reinstate* he filed on November 1, 2005, and he also provided that objections must be filed by September 9, 2005 (a date that had since passed and also the same date Mr. Angeleri used in the prior Notice of Opportunity to Object). Due to the missing signature, the Clerk's office issued a *Memorandum of Document Deficiency* on November 2, 2005, giving Mr. Angeleri 48 hours to submit a signed Notice to the Court's e-mail dropbox. A BNC Certificate of Mailing was entered on November 5, 2005, showing that the *Memorandum of Document Deficiency* was mailed first class to Mr. Angeleri on November 4, 2005. However, Mr. Angeleri had already filed a signed *Notice of Opportunity to Object* on November 3, 2005, although it still contained an incorrect response time. Because Mr. Angeleri filed a signed *Notice of Opportunity to Object*, and no objections were filed, the clerk's office then entered an *Order to Submit Order* on December 20, 2005, giving Mr. Angeleri ten days to submit a proposed order to the Court on his *Motion to Reinstate*. However, the Court noticed that the *Notice of Opportunity to Object* included an incorrect response time and entered an *Order Vacating Order to Submit Order and Order to Show Cause Why Motion to Reinstate Should Not Be Denied for Failure to Notice Properly* on December 21, 2005.[33] A BNC Certificate

---

**33.** The Clerk's office did not note the incor-

rect response time, which is an error they are

of Mailing was entered on December 24, 2005, showing that this order was mailed to Ms. Angeleri and Ms. Tittle on December 23, 2005. On December 28, 2005, Mr. Angeleri filed a *Notice of Opportunity to Object* which was both signed and included an appropriate response time of 20 days from the date of the notice. On January 24, 2006, Ms. Tittle's case was finally reinstated for a second time. She received her discharge on March 3, 2006.

## SANCTIONS

### A. *Legal Standard.*

■ The Court has the authority, under Federal Rule of Bankruptcy Procedure 9011, its inherent authority, and pursuant to 11 U.S.C. § 105(a), to sanction persons appearing before it. *See* FED.R.BANKR.P. 9011(c)(1)(B); *Walton v. LaBarge (In re Clark)*, 223 F.3d 859, 864 (8th Cir.2000); *In re Brown*, 152 B.R. 563, 567 (Bankr. E.D.Ark.1993) (*citing Harlan v. Lewis*, 982 F.2d 1255 (8th Cir.1993) and *Citizens Bank & Trust Co. v. Case (In re Case)*, 937 F.2d 1014, 1023 (5th Cir.1991)); 11 U.S.C. § 105(a). Additionally, this Court has adopted Local Rule 2090–2 (adopted January 12, 2006) which provides, in part: " . . . the Court shall have such authority and discretion as are permitted by and under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, statutory and common law, and the express and inherent powers conferred upon them. Sanctions may include suspension or disbarment from the practice before this Court."

■ Before exercising its inherent authority to award sanctions, the Court must find that the party to be sanctioned has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *See Chambers*

*v. NASCO, Inc.*, 501 U.S. 32, 45–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (citations omitted). "Sanctions imposed under the court's inherent power to sanction should serve the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court [and making] the prevailing party whole for expenses caused by his opponent's obstinacy." *In re Kujawa*, 2000 WL 33954570 (Bankr.E.D.Mo.2000) (citations omitted). Further, the Court may disgorge fees paid to an attorney in connection with a bankruptcy case pursuant to 11 U.S.C. § 105(a), 11 U.S.C. § 329 and Fed. R. Bankr.P. 2017 if the Court finds the fees to be excessive. "To determine whether fees are excessive, a court should compare the amount of compensation that the attorney received to the reasonable value of the services rendered." *See In re Zepecki*, 258 B.R. 719 (8th Cir. BAP 2001) (*citing In re Redding*, 247 B.R. 474, 478 (8th Cir. BAP 2000)).

### B. *Analysis.*

■ The record in this case clearly shows that Mr. Angeleri has not adequately represented his clients and has not earned the fees they paid him. Accordingly, the Court is ordering Mr. Angeleri to disgorge all fees paid to him by the clients listed in this Order.

Given Mr. Angeleri's statements during the Order to Show Cause Hearing, it appears that he would have the Court believe that his situation was like that of a doctor administering aid to the injured in a location where a natural disaster has just taken place. That he, Mr. Angeleri, was doing the best he could do in circumstances not of his OWN making. However, the reality (as evidenced by

---

neither required nor trained to detect; placing the correct time to respond is a profes-

sional obligation of the Debtor's attorney.

Mr. Angeleri's own testimony) is that Mr. Angeleri advertised aggressively with the intent of attracting a volume clientele. He had neither the expertise nor the staff to represent these clients, but he nevertheless accepted the representation. He had neither experience in bankruptcy, nor in practicing law, and as the evidence proves, he was not capable of representing his clients. Mr. Angeleri failed to provide the most basic service to his clients: he put people in bankruptcy without authority; he filed a pleading with a person's signature who had neither signed nor authorized such pleading; he filed a petition in a debtor's name and then attached a different debtor's personal financial information to that petition; he took client's money for the sole purpose of filing their bankruptcy petitions but did not pay the filing fee until the case was dismissed; he did not notify his clients that their cases had been dismissed; he knowingly made allegations in legal pleadings which were not true; he did not obey Court orders directing him to submit orders reinstating his clients' cases; and he failed to communicate with his clients.

Further, Mr. Angeleri appeared at the Show Cause Hearing completely unprepared—he did not prepare even though the Order to Show Cause specifically addressed only eight cases and listed specific deficiencies with respect to each case (as illustrated by the chart reproduced in this Opinion). He brought neither his clients' files nor the dockets for the cases to the hearing. The Order to Show Cause was issued on January 20, 2006, and set for hearing on February 7, 2006. Between the date of the Order to Show Cause and the Order to Show Cause hearing, Mr. Angeleri took action to cure deficiencies in

Ms. Bost's case (by filing the deficient petition and schedules on January 22, 2006), and in Ms. Hardcastle's case (by filing a Motion to Reinstate on January 21, 2006, which falsely stated the filing fee had been paid). In the Kelleys' case, Mr. Angeleri finally took action on the day of the Order to Show Cause Hearing by filing the necessary documents, and in Mr. Slater's case, Mr. Angeleri finally submitted an order reinstating the case after the Court instructed him to do so at the Order to Show Cause Hearing. The Court notes that in the Ellis, Freeman, Hanbrick and Tittle cases, no action was necessary during this time period—the deficiencies in these cases had been cured, and these Debtors were simply awaiting discharge at the time of the Order to Show Cause Hearing. No matter whether action was taken, not taken or not needed, Mr. Angeleri appeared at a hearing set for the purpose of inquiry into specific cases unprepared to inform the Court as to the status of these cases.

Each of the cases subject to this Order was dismissed with the exception of Ms. Ellis's and the Kelley's; the cases of Ms. Hardcastle and Ms. Tittle were each dismissed twice. Dismissing a case delays all action in a case with a significant impact on the date the debtor receives a discharge. In general, a debtor may receive a discharge 60 days after the date set for the first meeting of creditors; this meeting is generally set on a date within thirty days of the bankruptcy filing, and accordingly, provided no complaints are filed challenging a debtor's discharge or seeking to determine the dischargeability of a debt, a debtor will generally receive a discharge within approximately 90 days of filing bankruptcy.[34] The debtors in these cases

---

**34.** When a case is reinstated following dismissal, this deadline for objections should be

reset when the new meeting of creditors is

received their discharges in the following number of days: Ms. Bost: 116 days; Ms. Ellis: 178 days; Ms. Freeman: 178 days; Ms. Hanbrick: 170 days; Ms. Hardcastle: 151 days; Mr. and Mrs. Kelley: 128 days; Mr. Slater: at least 189 days, provided he receives his discharge on or about May 8, 2006; Ms. Tittle: 230 days. According to Court statistics, the bulk of cases filed just before October 17, 2005, were discharged between January 8, 2006, and January 21, 2006, when 4109 cases were discharged as compared to 841 which were discharged the week beginning January 1, 2006, and 746 which were discharged the week beginning January 22, 2006. These statistics indicate that the bulk of cases filed just before October 17, 2006, were discharged in approximately 90 days.

Each case listed on the Order to Show Cause evidences representation far below an acceptable standard for any bankruptcy practitioner in Arkansas, and each case listed on the Order to Show Cause reflects extraordinary clerk's office involvement. Had this Court not had a system of safeguards in place to notify counsel when deficiencies occurred, not one of these clients would have received a discharge. These safeguards (such as the Clerk's offices' Memorandums of Document Deficiencies, Orders Regarding Deficiencies, Orders to Submit Orders, etc.) which exist to deal with the exception to the rule, established the "rule" by which Mr. Angeleri practiced law. Mr. Angeleri relied on the clerk's office to find his mistakes, to issue specific directions to cure those mistakes, and to give him time to cure those mistakes. In most of the cases outlined in this Order, it took Mr. Angeleri several tries to correct those mistakes, despite his receiving specific directions as to what to do. Based on the evidence presented herein, the Court concludes that Mr. An-

scheduled. *See In re Dunlap,* 217 F.3d 311

geleri deliberately manipulated the bankruptcy system. The Court finds that Mr. Angeleri blatantly disregarded the filing requirements mandated in the Federal Rules of Bankruptcy Procedure, and exploited the routine procedures of the Clerk's office.

However, Mr. Angeleri's exploitation was not limited to the bankruptcy system; he also exploited his clients. Mr. Angeleri accepted payment for services he did not fully provide. He testified that he never accepted a client without some form of payment. He testified that he required at least $175 to begin a client's paperwork, and his full fee was $350 in addition to the filing fee of $209. He indicated in his testimony that he may have left it up to each client to pay their own filing fee, by stating that he informed his clients that they were required to pay the filing fee before the first meeting of creditors. In each of the instant cases (with the exception of Ms. Freeman's and Ms. Hanbrick's cases), Mr. Angeleri filed an Attorney Disclosures of Compensation stating that he received $350 for legal services rendered or to be rendered in contemplation of the case or in connection with the case prior to filing. Federal Rule of Bankruptcy Procedure 1006(b) provides as follows:

(1) *Application for Permission to Pay Filing Fee in Installments.* A voluntary petition by an individual shall be accepted for filing if accompanied by the debtor's signed application stating that the debtor is unable to pay the filing fee except in installments. **The application shall state** the proposed terms of the installment payments and **that the applicant has neither paid any money nor transferred any property to an attorney for services in connection with the case.**

(5th Cir.2000).

. . .

(3) *Postponement of Attorney's Fees.* **The filing fee must be paid in full before the debtor or chapter 13 trustee may pay an attorney or any other person who renders services to the debtor in connection with the case.**

(Emphasis added). Mr. Angeleri violated this rule by accepting payment prior to paying the filing fee, as evidenced both by his testimony at the Order to Show Cause hearing and in the Attorney Disclosure of Compensation he filed in almost every case. In each of these cases, he filed an *Application to Pay Filing Fee in Installments,* with each respective debtor's electronic signature as well as his own signature, which included the following statement:

I further certify that I have not paid any money or transferred any property to an attorney for services in connection with this case and that I will neither make any payment nor transfer any property for services in connection with this case until the filing fee is paid in full.

These signed applications are in direct conflict with the Attorney Disclosures of Compensation Mr. Angeleri filed and also in conflict with his own testimony that he always took at least $175 to start the paperwork for a client who was considering filing bankruptcy. He placed debtors' signatures as well has his own on documents which he knew contained false statements.

■ Absent reliance on and compliance with Fed. Rule Bankr.P. 1006(b), filing fees are to be paid simultaneously with filing.[35] In each of the cases dealt with in this Order, it took Mr. Angeleri the following number of days to pay the filing fee: Ms. Bost—33 days; Ms. Ellis—32 days; Ms. Freeman—66 days; Ms. Hanbrick—92 days; Ms. Hardcastle—123 days; Mr. and Mrs. Kelley—32 days; Mr. Slater—100 days; and Ms. Tittle—111 days. With the exception of Ms. Bost, Ms. Ellis and Mr. and Mrs. Kelley, whose filing fees were paid just after the date first set for the meeting of creditors, all of these delays are forbidden by General Orders and the Federal Rules of Bankruptcy Procedure. Mr. Angeleri, by creating chaos[36] and making false statements avoided the normal structure through which these rules are enforced.

As amply illustrated in the eight cases detailed in this Opinion, Mr. Angeleri lacked an understanding of bankruptcy, and failed to grasp the professional responsibilities he, as a lawyer, owed his clients. He advertised to do something that he was not competent to do, failed to correct mistakes after they were brought to his attention, and continued to file cases even though he could not provide representation to his clients. He made false statements in signed pleadings. Mr. Angeleri has shown recklessness with respect to his client's needs and their property. The debtors named in this Opinion had either homes or cars, or both, to protect in bankruptcy. All of these clients needed a

---

**35.** When an attorney files a new petition using the ECF (Electronic Case Filing) system, he or she must indicate in the system whether or not the fee is being paid at the time the petition is filed or will be paid in installments. If the filer indicates that the fee is being paid simultaneously with the petition, he or she will be prompted to enter a credit card number in order to pay the filing fee at that time. If the Court has approved an Application to Pay Filing Fee in Installments, the attorney must docket an Acknowledgement of Fee Due to pay the filing fee on-line at a later date, and at that time, he or she will be prompted to enter his or her credit card information. In each of the instant cases, the docket indicates that Mr. Angeleri paid the filing fees with a credit card.

**36.** *See, supra,* pp. 14 to 42.

bankruptcy discharge [37] and they needed the protection of the automatic stay. Due to Mr. Angeleri's actions, many of them lost that protection when their cases were dismissed without their knowledge, and were it not for the procedures established and utilized by the Clerk's office, not one client would have received a discharge.

## CONCLUSION

For these reasons stated herein, it is hereby

**ORDERED** that Mr. Angeleri must disgorge and return to each of the respective chapter 7 trustees [38] for each Debtor's case listed in this Order the total sums paid him, less the filing fees paid; it is

**FURTHER ORDERED** that Mr. Angeleri shall file a Certificate of Compliance with this Court within thirty (30) days of entry of this Order, averring that the fees have been paid pursuant to this Order with the signature of each respective chapter 7 trustee to whom the fee was returned. Failure to timely pay the fees and file the Certificate may be grounds for an Order to Show Cause why Mr. Angeleri should not be held in contempt of Court; it is

**FURTHER ORDERED** that this Opinion will be forwarded to the Arkansas Supreme Court's Committee on Professional Conduct as a complaint against Mr. Angeleri. This Court will enter and set for hearing an Order to Show Cause why Mr. Angeleri should not be suspended from practicing law in the Arkansas Bankruptcy Courts in accordance with Local Rule 2090-2 until the Committee on Profession-

al Conduct reaches a decision on this Complaint; and it is further

**FURTHER ORDERED** that this Opinion will be forwarded to the United States Attorney's office for further investigation of possible bankruptcy crimes under 18 U.S.C. § 151, *et seq.*

**IT IS SO ORDERED.**

---

**37.** As an example, Ms. Hanbrick sought to discharge over $100,000 in medical bills.

**38.** Pursuant to 11 U.S.C. § 329, the court may order that excessive attorneys' fees be returned, but such payment must be made to the trustee if the fees would have been prop-

erty of the debtor's estate. The Court has insufficient information to determine if the fees in these cases would have been property of the estate, and accordingly, orders that such fees be paid to the Chapter 7 Trustees so that they may make that determination.